KING, Circuit Judge,
dissenting:
The ultimate issue in this case is simple: Does a “Waiver and Release Agreement” reasonably encompass a non-solicitation clause? It plainly does not, and I respectfully dissent.
I.
This issue arises in the context of a plan administrator’s construction of an ERISA benefit plan.[1] By its terms, the Plan provided, inter alia, that an employee would be eligible for enhanced severance benefits if he signed “a Waiver and Release Agreement in a form prepared by the Company[J” The district court granted judgment to Marsh, determining that Friz could be required to execute a Waiver and Release Agreement containing a non-solicitation clause. I disagree, and I would reverse.
II.
A.
As the majority observes, we accord' substantial deference to a plan administrator’s eligibility determination when the plan vests the administrator with discretionary authority to construe it. See Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir.1997). To pass muster, however, *283 Pazicky’s construction of the Plan must be objectively reasonable. See id.[2] I am convinced that Pazicky’s decision to deny Friz enhanced benefits was, as a matter of law, unreasonable and inconsistent with the plain and unambiguous provisions of the Plan.
B.
In assessing Pazicky’s decision to deny Friz his enhanced benefits, we must confine our analysis to the terms of the written Plan as it was presented to the employees (the Plan’s prospective beneficiaries). While the Plan expressly conditioned receipt of enhanced benefits on the signing of “a Waiver and Release Agreement in a form prepared by the Company,” it did not further define the agreement, and it contained no reference to a non-solicitation clause.
Marsh insists that it had, by means of its so-called Broadcast Memo of January 4, 1999, ante at---, informed its employees that the Waiver and Release Agreement would “includ[e] a specific clause on non-solicitation of both accounts and employees of the company.” While Friz denies receiving the Broadcast Memo, this point is a red herring. Put simply, neither this fugitive document nor its contents were embodied in the written Plan. An ERISA plan may be construed only by its written terms, without reference to unincorporated ancillary documents. See 29 U.S.C. § 1104(a)(1)(D) (establishing the duty of plan fiduciaries to act solely “in accordance with the documents and instruments governing the plan.”).
Although Marsh was entitled to amend the Plan — and to incorporate into it a non-solicitation provision — it did not do so. Because Marsh did not so amend the Plan, Pazicky could not rely on the Broadcast Memo in determining the scope of the Waiver and Release Agreement. Likewise, in evaluating the reasonableness of Pazicky’s construction, we must limit our analysis to the contents of the Plan itself.
C.
Construing the Plan to encompass a non-solicitation provision perverts the plain meaning of the terms “waiver” and “release,” considered either separately or in combination. For example, Black’s Law Dictionary defines “waiver” as “[t]he voluntary relinquishment or abandonment ... of a legal right or advantage.” Black’s Law Dictionary 1574 (7th ed.1999). Similarly, that text defines “release” as “[t]he relinquishment or concession of a right, title, or claim.” Id. at 1292.
In this circumstance, it would have been reasonable to expect the Waiver and Release Agreement to cover all claims Friz could raise against Marsh, such as discrimination claims or compensation disputes, arising from his employment or termination. Presumably, Friz’s execution of such an agreement would be valuable to Marsh, sparing the company the uncertainty and expense of potential lawsuits. While Marsh would also derive considerable value from a non-solicitation agreement, such a provision involves a distinct type of forbearance on the part of Friz. Whereas a waiver and release would pre *284 elude former employees from pursuing claims against Marsh — in particular, claims arising out of (past) events — a non-solicitation agreement inhibits the employee from engaging in (future) business conduct.[3]
III.
Under the Plan’s terms, Marsh retained control over the specific form of the Waiver and Release Agreement. Marsh was entitled to prepare the agreement, but it was nonetheless constrained by the essential nature of a waiver and release. When Marsh inserted the non-solicitation clause into the Waiver and Release Agreement, it added an invalid condition to which Friz could not reasonably be held.
I believe the district court erred in its disposition of Friz’s claim, and I respectfully dissent.

. The ERISA plan to be construed is the J & H Marsh & McLennan, Inc. Acquisition Severance Pay Plan (the "Plan”), as exclusively set forth in the Summary Plan Description.

. Where, however, a conflict exists between the interests of the plan administrator and the employee, the deference accorded the administrator is reduced to “the extent necessary to counteract any influence unduly resulting from the conflict.’’ Ellis, 126 F.3d at 233. While Pazicky faced a serious conflict of interest in this case — since his expansive interpretation of waiver and release would necessarily accrue to his employer’s benefit — we need not resolve the precise scope of any deference owed, as Pazicky’s construction of the Plan was patently unreasonable.

. Indeed, the draft Waiver and Release Agreement prepared by Marsh implicitly regarded the waiver and release as entirely distinct from the non-solicitation clause. The unexecuted agreement provided in part:
In exchange for providing you with the above referenced payments ..., you agree to waive all claims against the Company and release and discharge the Company from liability for any claims or damages that you may have against it as of the date of this Agreement, whether known or unknown to you. This waiver and release includes, but is not limited to, any claims arising under any federal, state or local law or ordinance ....
J.A. 37-38 (emphasis added). The prohibition against solicitation followed in a separate clause:
You also agree that for the one year period following termination, you will not, directly or indirectly, solicit, divert, or take away, in whole or in part, any clients or prospects of the Company....
J.A. 38 (emphasis added). Thus, the agreement itself treated the waiver and release as a discrete provision, to which the non-solicitation clause was simply appended.